IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| STEVEN WERNECKE, ) | |
| ) | Case No. 3:13-cv-00739-JO |
| Plaintiff, ) | |
| ) | |
| v.  ) | |
| ) | OPINION AND ORDER |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

JONES, J.,

Plaintiff Steven Wernecke appeals the Commissioner's decision denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

**PRIOR PROCEEDINGS**

Wernecke filed his applications in August 2009, initially alleging disability beginning on April 1, 2005. Admin. R. 13. He alleged he could not work due to a learning disorder and mental health problems. Admin. R. 251. At the administrative hearing, Wernecke amended his alleged onset date to January 1, 2009. Admin. R. 13.

The Administrative Law Judge (ALJ) applied the sequential disability determination process described in 20 C.F.R. §§ 404.1520 and 416.920. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At step one, the ALJ found that Wernecke had not engaged in substantial gainful

1  Opinion and Order

activity since his amended alleged disability onset date. At step two, he found that Wernecke had severe impairments, specifically substance abuse (methamphetamine and cannabis), borderline intellectual functioning, a learning disability, an anxiety disorder and attention deficit hyperactivity disorder. Admin. R. 15. At step three, the ALJ found Wernecke did not have an impairment or combination of impairments that met or equaled the requirements of a listed impairment. Admin. R. 16. The ALJ found that Wernecke's complaints concerning the intensity, persistence and limiting effects of his symptoms were not credible. Admin R. 18, 23-25. He also determined that Wernecke had the residual functional capacity (RFC) to perform medium work, except that Wernecke would be limited to simple repetitive work. Wernecke could not be required to do extensive writing or more than simple math and could not have more than occasional interaction with coworkers, the public and his supervisor, from whom he should receive verbal work instructions. Admin. R. 17

The VE testified that a person having Wernecke's age, education, work experience and RFC could perform jobs that exist in significant numbers in the national economy such as night cleaner, dishwasher/kitchen helper and addresser. Admin. R. 82-85. The ALJ concluded that Wernecke was not disabled as defined by the Social Security Act. Admin. R. 26.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.* 359 F.3d 1190, 1193 (9th Cir. 2004). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record, even if evidence exists to support another rational interpretation. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1039-40 (9th Cir. 1995).

## DISCUSSION

Wernecke contends the ALJ did not properly evaluate the opinions of the medical experts. Specifically, he argues the ALJ erred in the relative "weight" given the opinions of the treating psychiatrist and various examining psychologists. Wernecke also claims the ALJ committed reversible error by failing to consider Wernecke's inability to sustain employment for longer than brief periods.

   A. Medical Opinions

      1. Treating physician's opinions

Wernecke argues that the ALJ erred by giving "little weight" to the treating psychiatrist Dr. Suckow's opinion because the ALJ erroneously concluded that Dr. Suckow was a non-treating physician. Wernecke misinterprets the ALJ's decision. In his decision, the ALJ acknowledged several times that Dr. Suckow was Wernecke's treating psychiatrist. The ALJ noted that "[o]n February 15, 2011, the claimant's treating psychiatrist, Joel Suckow, MD…" Admin. R. 20. He referred to "(GAF) scores indicated by his treatment provider" citing Dr. Suckow's treatment notes. Admin. R. 20. Wernecke points to the sentence in the ALJ's opinion in which the ALJ explained his reason for giving "great weight" to Dr. Suckow's diagnostic assessment, but "little weight" to Dr. Suckow's assessment of overall functioning: "[Dr. Suckow's overall functioning assessment] is inconsistent with the assessment of other non-treating providers, the claimant's scores on objective cognitive testing as well as the claimant's modest activities of daily living." In this sentence, the ALJ is not saying Dr. Suckow is a non-treating physician, he is only explaining that he discounted a portion of Dr. Suckow's assessment because it was inconsistent with the assessment of other medical personal who were non-treating

3  Opinion and Order

physicians and who had provided reports about Wernecke. The ALJ did not conclude Dr. Suckow was a non-treating physician.

Wernecke next argues that because Dr. Suckow was his treating physician, the ALJ cannot reject Dr. Suckow's Global Assessment of Function (GAF), without providing specific and legitimate reasons for doing so that are supported by substantial evidence in the record. The ALJ must consider all medical opinion evidence. 20 C.F.R. § 404.1527(b). Although not bound by an expert medical opinion on the ultimate question of disability, the ALJ must provide "specific and legitimate" reasons for rejecting the opinion of a treating physician. *Lester v. Chater,* 81 F.3d 821, 830–31 (9th Cir.1995). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir.1989) (citation omitted). Here, the ALJ's reasons for giving "little weight" to Dr. Suckow's GAF were three-fold: (1) the GAF was inconsistent with the GAF scores of other medical providers; (2) the GAF was inconsistent with claimant's scores on objective cognitive testing; and, (3) the GAF was inconsistent with claimant's modest activities of daily life. Wernecke takes issue with each of the reasons.

In support of his decision, the ALJ set out a detailed and thorough summary of the facts and clinical evidence. Admin. R. 18-23. He reviewed Wernecke's education, work experience, family life and medical history. He described claimant's psychological and physical medical history, including anxiety, depression, anger issues, and abdominal pain. The medical record contained six GAF[1] scores: two provided by Dr. Suckow, who assigned Wernecke GAF scores of 36-44 and 45 (Admin. R. 395, 652), two from non-treating physicians, Drs. Dietlein and

---

[1] GAF describes an individual's psychological, social and occupational functioning, using a single measure. The assessment is made based either on the individual's functional impairments or his symptoms. *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* 32-34 (4th ed. Text Revision 2000) (DSM IV-TR).

4 Opinion and Order

Spendal, who assigned GAF scores of 55 (Admin. R. 356, 417), and two from the Polk County Mental Health records indicating a GAF score of 55 (Admin. R. 573, 576). The ALJ concluded that Dr. Suckow's GAF scores were inconsistent with the GAF scores of other medical providers and discounted the opinion on that basis.

In addition, the ALJ discounted Dr. Suckow's GAF scores because they were inconsistent with the results of the objective tests Wernecke took. The ALJ listed the objective tests Wernecke took including the Wechsler Adult Intelligence Scale – 3rd Edition (WAIS-III), Wechsler Memory Scales, Third Edition (WMS-III), Wechsler Individual Achievement Test (WIAT), Wender Utah Rating Scales, Self Version (WURS), Adult Attention deficit Disorder Evaluation Scales, Self Version (A-ADDES). The ALJ noted that Wernecke's scores on these cognitive tests ranged from low average to the borderline area, but no worse than borderline intellectual functioning. Admin. R. 19. The ALJ acknowledged that claimant's scores on the WURS and A-ADDES combined with Werncke's assertion that he could not sit still to view a thirty-minute television show, suggested an ADHD diagnosis. However, the ALJ remarked that Wernecke completed detailed cognitive testing twice, and "although he required oral directions and instructions repeated at times, the claimant was able to sit through the complete battery of cognitive tests." Admin. R. 19.

Finally, the ALJ discounted Dr. Suckow's GAF scores because they were inconsistent with Wernecke's ability to engage in modest activities of daily living. The low GAF scores provided by Dr. Suckow signify a patient with impairment in reality testing or communication or serious symptoms in several areas, such as work, school, family relations, judgment or mood. *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* 32-34 (4th ed. Text Revision 2000) (DSM IV-TR). Wernecke's activities do not suggest such impairment or

5  Opinion and Order

symptoms and the ALJ found that Wernecke had only mild restrictions in daily living. The ALJ noted that Wernecke managed his personal care needs independently and helped care for his wife and children. Wernecke enjoyed working on cars and cooking; he cleaned the kitchen, did laundry, mowed the lawn, took out the trash, went to appointments and exercised on a daily basis. In social functioning, the ALJ acknowledged Wernecke's difficulties getting along with coworkers, his anger issues resulting in his wife getting a restraining order against him, and his problems with memory, task completion, concentration, understanding and following instructions. The ALJ concluded that Dr. Suckow's low GAF scores were inconsistent with Wernekce's ability to engage in the activities of daily living.

The ALJ set out a detailed and thorough summary of the facts and conflicting evidence. He provided specific and legitimate reasons to reject Dr. Suckow's low GAF scores on the bases of inconsistencies with other medical providers' GAF scores, with objective test results and with Wernecke's ability to engage in the activities of daily living. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). The ALJ reasonably evaluated and weighed the treating doctor's medical evidence and opinion. He provided specific and legitimate reasons for discounting Dr. Suckow's GAF that were supported by substantial evidence.

2. The other medical opinions

Wernecke contends that the ALJ erred in the weight given to the opinions of Dr. Nick Dietlein, Dr. Bill Hennings, Dr. Dorothy Anderson, Dr. Richard Frederick, Dr. Maribeth Kallemeyn and Dr. Jill Spendal. Specifically, he argues that the ALJ gave too much weight to the opinions of the examining psychologist Dietlein and the state agency examiners, Hennings and Anderson, but not enough weight to the opinions of examining psychologists Frederick, Kallemeyn, and Spendal. While I review each of Wernecke's contentions, at essence they

involve Wernecke's displeasure that the ALJ did not adopt Wernecke's opinion of the evidence. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

    a.   Allegations of too much weight given

Wernecke complains that Dr. Dietlein examined him in 2006, more than two-and-one-half years before the amended alleged onset date, and therefore his opinion is not relevant to Wernecke's functioning in 2009 and thereafter. Furthermore, he argues Dr. Dietlein's opinion is discredited because he did not perform formalized cognitive functioning tests on Wernecke and the GAF score of 55 contradicted Dr. Suckow's GAF score. The record shows that Dr. Dietlein conducted a psycho-diagnostic interview and concluded Wernecke had ADHD, a learning disorder, and gave him a GAF of 55. Admin. R. 358. Dr. Dietlein further concluded that Wernecke could understand and remember instructions, was able to sustain concentration and engage successfully in social interactions. Id. The ALJ noted that Dr. Dietlein's GAF score was consistent with the majority of the GAFs in the record and consistent with Wernecke's mental status examination and work history. Admin. R. 20. Finally, the ALJ observed that Wernecke' subsequent behavior corroborated Dr. Dietlein's opinion. Id.

While it is true that Dr. Dietlein's report was issued more than two-and-one-half years before the amended alleged onset date, Wernecke's original alleged onset date of 2005 was amended at the hearing only because Wernecke had significant gainful activity through 2008. The timing of Dr. Dietlein's opinion therefore has more bearing on Wernecke's credibility than on the validity of the opinion. At the time of Dr. Dietlein's assessment Wernecke indicated he was unable to work. However, over the next two years, Wernecke continued to work and in 2008, worked at a nearly substantial gainful activity level. Id. Accordingly, the ALJ properly

7 Opinion and Order

concluded that Dr. Dietlein's opinion offered a reasonably accurate picture of Wernecke's current condition. The ALJ provided specific and legitimate reasons for giving "significant weight" to Dr. Dietlein's opinion, even though it contradicted the treating physician's assessment.

Wernecke next argues that the ALJ erred in giving "significant weight" to the opinion of Dr. Hennings, a state agency examiner. Wernecke contends that Dr. Hennings' opinion, like Dr. Dietlein's opinion, dates from 2006 and is not relevant. Wernecke also argues that Dr. Hennings, a non-treating and non-examining medical source, based his opinion on incomplete records because the 2009 evaluations of Drs. Frederick, Spendal, Kallemeyn and Suckow were not extant and could not be reviewed. For these reasons, he argues that Dr. Hennings opinion is not entitled to "significant weight."

After a thorough review of Dr. Hennings report, the ALJ set out the reasons for giving "significant weight" to Hennings' opinion. He found Hennings' assessment consistent with the overall medical record, including the results of objective testing and the subsequent findings of Dr. Anderson. The ALJ also found Hennings' assessment consistent with Wernecke's education history, drug use, and short-tempered self-description. In addition, Hennings' opinion was affirmed by Dr. Boyd in 2010. Admin. R. 575. The ALJ provided specific and legitimate reasons supported by evidence for giving "significant weight" to Hennings' opinion.

Similarly, the ALJ set out specific and legitimate reasons supporting the weight he gave to the opinion of Dr. Anderson. Wernecke complains that the opinion was based on a review of incomplete medical records. The ALJ gave "great weight" to Dr. Anderson's 2009 assessment, in which she opined that Wernecke had ADHD, borderline intellectual functioning and a mood disorder. He had mild restrictions of activities of daily living but was capable of performing

8  Opinion and Order

simple and routine tasks when instructions were given to him verbally. Dr. Anderson's opinion was also reviewed and affirmed by Dr. Boyd in 2010. Admin. R. 575. As with Dr. Hennings' opinion, the ALJ found Anderson's opinion consistent with the outcomes of the objective testing, and the claimant's educational and drug use history.

    b.   Allegations of too little weight given

Wernekce objects to the weight given the opinion of Dr. Frederick. Wernecke was referred to Dr. Frederick by Wernecke's Oregon State TANF (Temporary Assistance for Needy Families) caseworker for an evaluation to determine if Wernecke had a learning disability. Dr. Frederick administered several standardized tests as a part of the psycho-educational assessment and concluded that claimant "meets eligibility requirements for a learning disability..." Admin. R. 390. The ALJ gave "some weight" to Dr. Frederick's opinion as evidenced by the ALJ's step two findings, which included a "learning disability." Admin. R. 15. Later in his opinion, the ALJ commented that Dr. Frederick's assessment was done in the context of a state rather than a federal disability assessment. Wernecke's misinterprets the ALJ's comment as a basis to discount the weight given to Dr. Frederick's opinion. Rather, the ALJ was merely distinguishing the state assessment from a DDS evaluation. The ALJ agreed with Dr. Frederick's conclusions, found them to be consistent with other medical opinion and the claimant's educational history, and adopted them.

Next, Wernecke claims the ALJ erred in giving only "some weight" to the opinion of Dr. Kallemeyn. In his brief, Wernecke sets out three of Dr. Kallemeyn's findings: that Wernecke was not malingering; that he put forth adequate effort during the testing; and, that his test scores could be mildly elevated due to practice effects. However, Wernecke does not allege that the ALJ discounted or dismissed these findings. Indeed, Wernecke fails to identify any specific

9 Opinion and Order

finding the ALJ discounted or dismissed. I find no error and Wernecke failed to specify an error made by the ALJ. *See Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

Wernecke also argues that the ALJ's reasons for discounting the opinion of Dr. Spendal do not constitute substantial evidence. Dr. Spendal opined that numerous barriers exist that block Wernecke's road to employment, including ADHD, depression, anxiety and learning disabilities. Dr. Spendal concluded: "It is not believed that [Wernecke] will be able to work at this time." In giving Dr. Spendal's opinions "little weight," the ALJ provided three reasons: (1) Dr. Spendal appeared to be unaware of Wernecke's significant past drug problem and marijuana usage, (2) her assessment was inconsistent with the GAF score (55) she assigned; and (3) her assessment was inconsistent with the treating physician's, Dr. Suckow's, opinion regarding Wernecke's ability to work. The ALJ provided specific and legitimate reasons to give little weight to Dr. Spendal's opinion.

B. RFC determination

. Wernecke contends the ALJ failed to consider his inability to sustain employment on a regular and continuing basis. The ALJ's decision reflects that he considered the evidence of Wernecke's work history. Wernecke was terminated from work requiring reading and writing and the ALJ removed such occupations from Wernecke's RFC. Indeed, the ALJ considered all the evidence of functional limitations and reached an RFC assessment based on the limitations supported by the record as a whole. The ALJ was not required to incorporate additional limitations he found unsupported by the record. *Batson*, 359 F3d at 1197-98; *Osenbrock v. Apfel*, 240 F3d 1157, 1163-65 (9th Cir 2001); *Magallanes v. Bowen*, 881 F2d 747, 756-57 (9th Cir 1989). Wernecke's argument regarding his alleged inability to sustain employment fails

because he did not meet his burden of proving such an impairment. *See Mayes v. Massanari*, 262 F.3d 963, 968 (9th Cir. 2001) (Claimant has the burden of proving all medically determinable impairments and their effect on the ability to work on a sustained basis). The ALJ reasonably determined Wernecke's RFC and supported his determination with substantial evidence from the record.

## CONCLUSION

The ALJ evaluation of the medical opinions in this case was based on substantial evidence and he gave specific and legitimate reasons for adopting or rejecting the opinions. The ALJ also properly evaluated claimant's RFC and supported his decision with substantial evidence from the record. For these reason, the Commissioner's final decision is AFFIRMED.

DATED this ___2nd___ day of July, 2014.

Robert E. Jones, Senior Judge
United States District Court